**Date signed August 12, 2004**



                PAUL MANNES
         U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| WARNER STREET, INC., | : | Case No. 04-15994PM |
| | : | Chapter 11 |
| Debtor. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

      After an examination of the record of this case, this court passed an "Order to Show Cause Why This Court Should Not Abstain from the Exercise of Jurisdiction over This Bankruptcy Case Under Chapter 11," on June 17, 2004, together with a Memorandum. The matter came on for hearing on July 22, 2004. The court heard the testimony of Lawrence Hillman ("Hillman"), the president, treasurer, director and 100% shareholder of the Debtor, and of Murray Cohen ("Cohen"), a former shareholder now serving as vice-president, secretary and director.

      Debtor scheduled its real property that is improved by a warehouse at a value of $2.5 million. The Schedules reflect one disputed secured claim for an undetermined amount held by the estate of Alex Dandy ("Dandy" or "the Dandy estate"), one unsecured priority claim for an undetermined amount held by the State of Maryland and two unsecured non-priority claims – Hillman being one of the creditors ($450,000.00) and the other an accounting firm ($10,000.00).

      Cohen had little to say at the hearing. He testified that the corporate account usually had a balance of $60,000.00 to $70,000.00. He did not know whether or not he was a shareholder. Cohen

testified that the real property produced income of approximately $12,000.00 a month, although the Debtor's Schedule G reflects unexpired leases amounting to $13,460.00 a month.[1]

Four proofs of claim were filed.  Lilah A. Dandy, Dandy's widow, filed a claim of an uncertain amount, although the attachment to the claim says that it is approximately in the amount of $1,700,000.00.  It is said to be based upon advances made to Hillman and his spouse, but that the Debtor is responsible for these debts as an alter ego.  James T. Cooper ("Cooper"), as Trustee, filed a proof of claim as a holder of a secured claim in the sum of $481,953.37.  The Dandy's estate filed a proof of claim that is said to be "through James T. Cooper, Trustee."  A copy of the Cooper proof of claim was attached in support of that claim.  Morgan Smith Financial Services, Inc. filed a claim for $10,000.00 for accounting services.  Debtor filed objections to the claims of Cooper, Lilah A. Dandy and the Dandy estate.

This is the second bankruptcy case under Chapter 11 filed by the Debtor.  An earlier case was filed on November 17, 1999, and an Order was entered January 18, 2001, confirming the Debtor's Amended Plan.  A Final Decree was entered in that case on October 23, 2001.

As related by Hillman, the current dispute with Cooper and the Dandy's evolved when the holder of an obligation secured by the first lien on the real property, the Mortgage Investment Trust, sought to enforce its obligation as modified.  According to Hillman, the obligation could be satisfied for $300,000.00.  Hillman caused three cashier's checks to be issued, each in the sum of $100,000.00, payable to Mortgage Investment Trust.  Hillman testified that two of these cashier's checks were the product of his own funds. The source of the funds for the third cashier's check was the Debtor's bank account at Eagle Bank.  With the checks in hand, Hillman, in the company of Dandy, described by Hillman as a person who had rendered him valuable business advice in the past and such a close friend

---

[1] In answer to Question 3 on the Statement of Financial Affairs concerning payments aggregating more than $600.00 to any creditor within 90 days preceding the commencement of the case, the Debtor stated it had paid the State of Maryland Retail Sales Tax Division $45,145.00.  The court is uncertain as to what would cause this obligation to be owing by the Debtor.  While a lessor of tangible personal property must remit sales taxes on an accrual basis, as noted by the Court of Appeals in *Tidewater/Havre de Grace, Inc. v. Mayor and City Council of Havre de Grace*, 653 A.2d 468, 478 (Md. 1995), the court is unaware that sales taxes would be owed by a lessor of real property.

that he and Dandy were virtually inseparable, went to the settlement attorney's office to deliver the checks and obtain the cancellation of the Note.

In the course of this process, Hillman decided, since his funds represented $200,000.00 of the amount, merely cancelling the Note would provide an incidental benefit to his partner, Cohen. He did not want this. Therefore, he decided to have the Note endorsed to an attorney who was not known to be associated with him. At Dandy's suggestion, Hillman instructed the settlement attorney to have the Note endorsed to Cooper. Thus, Cohen would benefit neither from the $200,000.00 that Hillman said he advanced nor from the $100,000.00 paid by the Debtor.

When Cooper caused a foreclosure action to be docketed in the Circuit Court for Baltimore City, Maryland, this bankruptcy case under Chapter 11 followed. It is ironic that the scheme hatched by Hillman to shortchange Cohen resulted in this foreclosure action.

The issue before the court is whether it should abstain from the exercise of jurisdiction over this bankruptcy case. Section § 1334(c)(1) of Title 28 provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Pursuant to § 1334(c)(1), this court may abstain from the exercise of jurisdiction over this case. As demonstrated at the oral argument, this bankruptcy case was triggered by the filing of a foreclosure action in state court. The defense to that foreclosure is that Hillman is the legal owner of the note secured by the Deed of Trust and that Cooper is an interloper. The processes of this Bankruptcy Court were thus used to obtain a stay of the foreclosure. But Debtor has done nothing more with respect to that lien. Although this bankruptcy case was filed on March 11, 2004, the Debtor has yet to file any adversary proceeding seeking to obtain a declaration as to the invalidity of the Deed of Trust sought to be foreclosed. Whatever may be said about the Hillman/Warner Street, Inc. vs. Cooper/Dandys dispute, the decisional law is not found in Title 11. If the Debtor is correct, it does not owe any money to the Dandys[2] and Cooper (whose deposition never seems to have been taken by the

---

[2] There were many dealings between Dandy and Hillman. While Hillman testified that Dandy never loaned the Debtor any money, Dandy had loaned Hillman money from time to time, always in the form of cash, and that at the time of the filing of this bankruptcy case, Hillman had repaid Dandy most

Debtor) is not the rightful holder of the Note securing the Deed of Trust. These are classic state law actions. The Bankruptcy Court brings nothing to this case other than the automatic stay of 11 U.S.C. § 362(a).

Viewed from both the subjective and objective standard, this case ought to be dismissed or the court should abstain from the exercise of jurisdiction so as to allow the matter to proceed in the proper venue, the Circuit Court for Baltimore City, Maryland. To begin with, if the Debtor's schedules are accurate, there is no possibility of it obtaining confirmation of a Plan of Reorganization absent prevailing on its efforts to nullify the Cooper lien and defeating the Dandys' claim. Once this is done, all that is left is the insider claim of Hillman that cannot be counted, the $10,000.00 claim of the accountant and the undetermined priority claim of the State of Maryland for real estate taxes. This is a classic two-party dispute, with Hillman on one side and the Dandys' interests on the other. A suitable forum exists to protect the interests of all parties. *See In re 801 South Wells Street Ltd. P'ship*, 192 B.R. 718, 723-24 (B.C. N.D. Ill. 1996).[3]

An appropriate order will be entered.

cc:   Warner Street, Inc.
      Richard H. Gins, Esq.
      Jeffrey Rhodes, Esq.
      John J. Dillon, Esq.
      Lynn A. Kohen, Esq.

**End of Memorandum of Decision**

---

of the money owed. Similarly, Hillman had caused the Debtor to loan Dandy money and that, at the present time, Dandy, or more properly the Dandy estate, owed the Debtor money, although this asset was not listed on the Debtor's Schedule B.

[3] Were the court not to abstain from the exercise of jurisdiction over this case, it must be remembered that the case is susceptible to dismissal for want of good faith in filing. *See, generally, Carolin Corp. v. Miller*, 886 F.2d 693 (CA4 1989); *In re SGL Carbon Corp.*, 200 F.3d 154 (CA3 1999). Furthermore, this case involves what is known as "single asset real estate." 11 U.S.C. § 101(51B). As such, the real property is subject to immediate relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(3).